# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

PAUL JOSEPH WEIR (#129806)                                    CIVIL ACTION

VERSUS

DEPARTMENT OF CORRECTIONS, ET AL.                            NO. 10-0191-FJP-CN

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in chambers in Baton Rouge, Louisiana, December 9, 2011.

_____

MAGISTRATE JUDGE CHRISTINE NOLAND

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

PAUL JOSEPH WEIR (#129806)                          CIVIL ACTION

VERSUS

DEPARTMENT OF CORRECTIONS, ET AL.                   NO. 10-0191-FJP-CN

MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter comes before the Court on the cross-motions for summary judgment of the plaintiff and defendant James Stevens, rec.doc.nos. 33 and 35, and the Motion to Dismiss of defendants James Stevens, Tyrone Killborne, Janet Lorena, James LeBlanc, Steve Rader, Paul Payne, Lt.Col Brumfield, Keithe Turner, Chris Fontenot and the Louisiana Department of Public Safety and Corrections, rec.doc.no. 34.[1]

The pro se plaintiff, an inmate previously incarcerated at Dixon Correctional Institute ("DCI"), Jackson, Louisiana, filed this action pursuant to 42 U.S.C. § 1983 against the Louisiana Department of Public Safety and Corrections, Ass't Warden James Stevens, Lt.Col. Tyrone Killborne, Ass't Warden Janet Lorena, Secretary James M. LeBlanc, Warden Steve Rader, Lt.Col. Paul Payne, Lt.Col. Brumfield, Major Keithe Turner,

---

[1]     Defendant Curtis Thurman has filed an Answer in this proceeding but has not joined in either of the instant motions. It is likely that this omission is the result of inadvertence on the part of the defendants' attorney. Notwithstanding, the Court is authorized to dismiss a plaintiff's claim against a defendant, even if the defendant has not filed a motion requesting same, if the claim is frivolous, malicious, or fails to state a claim for which relief may be granted. See 42 U.S.C. § 1915(e) and 1915A. See also Green v. McKaskle, 788 F.2d 1116 (5th Cir. 1986). This Court, therefore, will recommend dismissal of the plaintiff's claims asserted against defendant Curtis Thurman for the same reasons as are stated herein relative to those defendants who have moved to dismiss the plaintiff's claims for failure to state a claim upon which relief may be granted.

Major Chris Fontenot, and Curtis Thurman, complaining that the defendants violated his constitutional rights in September and October, 2009, by coercing him to paint portraits as gifts for prison officials without compensation, by subjecting him to excessive force and failing to protect him from physical assault, by charging him with false and retaliatory disciplinary charges, by denying him due process during subsequent disciplinary proceedings, and by transferring him to a different institution in retaliation for his grievances and for his refusal to agree to take a lie detector test.[2]

Addressing first the defendants' Motion to dismiss, rec.doc.no. 34, a Complaint is subject to dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure if a plaintiff fails "to state a claim upon which relief can be granted." In <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), and more recently, in <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), the Supreme Court clarified the standard of pleading that a plaintiff must meet in order to survive a motion to dismiss under Rule 12(b)(6). The Court noted that "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" <u>Bell Atl. Corp. v. Twombly</u>, <u>supra</u>, <u>quoting</u> <u>Conley v. Gibson</u>, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). <u>See also</u> <u>Erickson v. Pardus</u>, 551 U.S. 89, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007). Notwithstanding, although "detailed

---

[2]     Defendant James Stevens has participated in both the Motion to Dismiss and in a separately filed cross-motion for summary judgment. The Court will address the plaintiff's claim of excessive force asserted against this defendant in dealing with the cross-motion for summary judgment.

factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, a plaintiff must furnish "more than labels and conclusions" or the" formulaic recitation of the elements of a cause of action" in order to provide the "grounds" of "entitle[ment] to relief." Bell Atl. Corp. v. Twombly, supra. See also Papasan v. Allain, 478 U.S. 265, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986). The Court further stated that while there is no "probability requirement at the pleading stage," Bell Atl. Corp. v. Twombly, supra, "something beyond ... mere possibility ... must be alleged." Id. Specifically, the facts alleged in the Complaint "must be enough to raise a right to relief above the speculative level," or must be sufficient "to state a claim for relief that is plausible on its face," Id. (abandoning the "no set of facts" language set forth in Conley v. Gibson, supra). A claim is facially plausible when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, supra. Where a Complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of entitlement to relief." Id.

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court "must accept as true all of the factual allegations contained in the Complaint." Erickson v. Pardus, supra. See also Bell Atl. Corp. v. Twombly, supra. Further, "[a] document filed pro se is to be liberally construed ... and a pro se Complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, supra (citations omitted).

In his Complaint, the plaintiff alleges that in September, 2008, defendant Janet Lorena approached the plaintiff, who is allegedly an

accomplished painter, and requested that the plaintiff paint a portrait of Secretary James LeBlanc for the DCI Administration Building. The plaintiff asserts that he felt pressured by this request but nonetheless provided the painting after defendant Lorena purchased the necessary supplies. According to the plaintiff, defendant Lorena was so pleased with the painting that she requested that the plaintiff make another so that she could give the first to Secretary LeBlanc as a gift. In addition, the plaintiff alleged that he was thereafter approached by defendant Chris Fontenot and was told that defendant Lorena wanted the plaintiff to paint a third portrait, this one of Governor Bobby Jindal, to give as a gift to Secretary LeBlanc. Although the plaintiff provided the requested portraits, he complains that he was never paid for his work.[3] As a result, he began to conduct legal research in an effort to determine what rights he had vis-a-vis the requests of defendant Lorena. According to the plaintiff, however, before he could take any action or file an administrative complaint, he was informed, on October 19, 2009, that Ass't Warden Stevens was looking for him. When the plaintiff thereafter located defendant Stevens at the DCI Training Center, defendant Stevens allegedly made threatening remarks to the plaintiff and told the plaintiff to accompany the defendant to the defendant's vehicle. As they were walking, defendant Stevens allegedly struck the plaintiff two or three times from behind, in the back of the plaintiff's head, with a sharp object which the plaintiff believes was a set of keys which he had seen in the defendant's hand. According to the plaintiff, defendants Killborne, Fontenot and Turner were also present at that time and

---

[3]    In a supplemental pleading, the plaintiff acknowledges that he has since been paid $ 150.00 for the referenced portraits.

observed this use of force, which allegedly caused a puncture wound to the plaintiff's scalp and caused him to bite through his tongue, to break a tooth, and to soil his clothing. The plaintiff was then driven by defendant Stevens to the DCI Security Building and was led to defendant Stevens' office where the defendant continued to threaten the plaintiff and informed the plaintiff that he would be required to take a lie detector test. In addition, defendant Stevens instructed defendant Brumfield, who arrived shortly thereafter, to ensure that the plaintiff was "locked up and stay[ed] there". The plaintiff was then escorted to the prison cellblocks and was held there without a written disciplinary charge for seventeen (17) days, until November 4, 2009. During this time, the plaintiff was requested to take a polygraph test, but he refused when the defendants would not allow him to have an attorney present. Finally, on November 4, 2009, the plaintiff was brought before a disciplinary board, which was chaired by defendants Brumfield and Thurman. The plaintiff there learned, for the first time, that he was being charged in connection with two disciplinary reports, written by defendant Paul Payne, which accused the plaintiff of (1) allegedly placing pieces of tape and wire insulation on or under doors near his workplace, and (2) failing to cooperate with an investigation by refusing to take a polygraph test. According to the plaintiff, defendants Brumfield and Thurman failed to provide him with procedural due process during the disciplinary hearing, and they found him guilty of the former charge although there was no evidence whatever to support it. After the plaintiff was found guilty, the defendants sentenced him to a transfer to segregated confinement (which resulted in a loss of his trustee status and job), to 12 months' loss of incentive wages, and to 30 days of cell

confinement.  The plaintiff complains that his administrative grievances and appeals relative to the foregoing were thereafter wrongly denied and that, on November 16, 2009, he was transferred to a different institution which is farther away from potential visitors.  He asserts that this transfer "was clearly to prevent me from speaking to anyone about this incident and retaliation against me."

In response to the plaintiff's allegations, the defendants first point out that, whereas the plaintiff has named the Louisiana Department of Public Safety and Corrections as a defendant herein, under the Eleventh Amendment to the United States Constitution, an unconsenting state is immune from any lawsuit seeking monetary damages or equitable relief brought in federal court by her own citizens.  Edelman v. Jordan, 415 U.S. 651, at 659, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974).  Although Congress has the power to abrogate this immunity through the Fourteenth Amendment, it has not done so as to claims for the deprivation of civil rights under color of state law.  See Fitzpatrick v. Bitzer, 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976); Quern v. Jordan, 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979); Edelman v. Jordan, supra.  Thus, absent consent or waiver, not here present, the State of Louisiana is immune from suit in this action.  This shield of immunity extends to the Louisiana Department of Public Safety and Corrections as an agency of the state.  Anderson v. Phelps, 655 F.Supp. 560 (M.D. La. 1985).  Therefore, the plaintiff's claims against the Department are barred by the Eleventh Amendment and must be dismissed.

The defendants next point out that the plaintiff has alleged only supervisory responsibility on the part of defendants James LeBlanc and Steve Rader.  In this regard, in order to be found liable under § 1983, a person must have been either personally involved in conduct causing the

alleged deprivation of the plaintiff's constitutional rights, or there must be a causal connection between the conduct of the defendant and the constitutional violation sought to be redressed.  <u>Lozano v. Smith</u>, 718 F.2d 756 (5th Cir. 1983).  Any allegation that these defendants are responsible for the actions of their subordinates or co-employees is alone insufficient to state a claim under § 1983.  <u>Monell v. Department of Social Services</u>, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Further, in the absence of direct personal participation by a supervisory official in an alleged constitutional violation, the plaintiff must allege that the deprivation of his constitutional rights occurred either as a result of a subordinate's implementation of the supervisor's affirmative wrongful policies, or as a result of a breach by the supervisor of an affirmative duty specially imposed upon him by state law.  <u>Lozano v. Smith</u>, <u>supra</u>.

Applying the foregoing standard, and upon a review of the plaintiff's Complaint, as amended, it appears that the plaintiff has failed to sufficiently allege that defendants LeBlanc and Rader personally participated in any violation of the plaintiff's constitutional rights.  The plaintiff does not allege, for example, that either of these defendants participated in allegedly coercing the plaintiff to provide uncompensated portraits, in subjecting him to excessive force on October 19, 2009, in charging him with false and retaliatory disciplinary reports, or in denying him due process at subsequent disciplinary board hearings.  Accordingly, it is clear that the plaintiff has failed to allege the requisite personal participation by these defendants in the violations alleged. The most that the plaintiff has alleged as to these defendants is that when he advised them of his complaints through correspondence, through an in-person meeting

with defendant Rader on November 5, 2009, and through one or more administrative grievances or disciplinary appeals, they failed to take remedial action to address his complaints. The law is clear, however, that the plaintiff is not constitutionally entitled to an investigation of his complaints or administrative grievances or to a favorable response thereto. Further, there is no procedural due process right inherent in such a claim. As stated by the United States Court of Appeals for the Fifth Circuit in <u>Geiger v. Jowers</u>, 404 F.3d 371 (5th Cir. 2005):

> Insofar as [the plaintiff] seeks relief regarding an alleged violation of his due process rights resulting from the prison grievance procedures, the district court did not err in dismissing his claim as frivolous.... [The plaintiff] does not have a federally protected liberty interest in having these grievances resolved to his satisfaction. As he relies on a legally nonexistent interest, any alleged due process violation arising from the alleged failure to investigate his grievances is indisputably meritless.

(Emphasis in original). Accordingly, the plaintiff's claim regarding an alleged failure by defendants LeBlanc and Rader to properly investigate and/or respond favorably to his complaints or administrative grievances is without legal foundation and must be dismissed.

Turning to the plaintiff's claim asserted against defendants Janet Lorena and Chris Fontenot, the plaintiff alleges that in September and October, 2009, defendant Lorena induced him to paint two portraits of Secretary James LeBlanc and, through a request relayed by defendant Chris Fontenot, a third portrait of Governor Bobby Jindal. The plaintiff asserts that he felt pressured by these requests and "used" by the defendants but nonetheless complied when defendant Fontenot advised that a refusal might result in the plaintiff losing his job position and associated privileges. The plaintiff further complains that he was never

sufficiently compensated for the referenced portraits.[4]

The plaintiff's allegations relative to these two defendants fail to state claims of constitutional dimension. First, to the extent that the plaintiff believed that there was an implied threat that he would be penalized if he did not prepare the referenced portraits, the law is clear that threats and verbal harassment do not amount to constitutional violations. "Mere threatening language and gestures of a custodial officer do not, even if true, amount to a constitutional violation." McFadden v. Lucas, 713 F.2d 143 (5th Cir.), cert. denied, 464 U.S. 998, 104 S.Ct. 499, 78 L.Ed.2d 691 (1983); Burnette v. Phelps, 621 F.Supp. 1157 (M.D. La. 1985). See also Johnson v. Glick, 481 F.2d 1028, 1033 n.7 (2nd Cir. 1973). The allegations against the defendants regarding implicit threats of reprisal, therefore, are not cognizable under § 1983. Further, the plaintiff's claim that these defendants deprived him of property (the portraits) or of monies which the defendants allegedly owe him is not properly before this Court. Under well-established federal jurisprudence, an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post-deprivation remedy for the loss is available. Hudson v. Palmer, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 383 (1984); Parratt v. Taylor, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981).[5] The burden

_____

[4] The plaintiff concedes, in a supplemental pleading, that the defendants have since given him $150.00 in purported payment for the referenced portraits. The plaintiff asserts, however, that this compensation is insufficient.

[5] The underlying rationale of Parratt and Hudson is that when deprivations of property are effected through either negligent or intentional conduct on the part of a state employee, pre-deprivation procedures are simply "impracticable" since the state cannot know when

is on the complainant to show that a post-deprivation remedy is not adequate.  Marshall v. Norwood, 741 F.2d 761 (5th Cir. 1984).  The plaintiff in the instant case has not alleged, however, nor is there any evidence to suggest, that state post-deprivation remedies were unavailable to him or inadequate.  To the contrary, Louisiana has ample remedies under which the plaintiff could have proceeded against the defendants for recovery of his property or for reimbursement for its loss.  Marshall v. Norwood, supra.  Accordingly, the plaintiff's claims asserted against defendants Lorena and Fontenot (of implied threats of reprisal and of property deprivation) are not claims of constitutional dimension and must be dismissed.

The plaintiff next contends that defendants Killborne, Fontenot and Turner failed to take action to protect him from harm when defendant Stevens struck the plaintiff on the head on October 19, 2009.  In this regard, a defendant security officer may be found responsible under the Eighth Amendment for a failure to intervene and take reasonable measures to protect an inmate from another officer's excessive use of force.  Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).  The "deliberate indifference" standard is appropriately applied in this context.  Id.  The test is whether the observing officer had actual knowledge of a substantial risk of serious harm to the inmate yet disregarded that risk by failing to take reasonable measures to prevent the resulting harm.  Id.  "Mere negligence or a failure to act reasonably is not enough.  The officer must have the subjective intent to cause harm."  Mace v. City of Palestine, 333 F.3d 621 (5th Cir. 2003).

The plaintiff fails to sufficiently allege or show that defendants

---

such deprivations will occur.  Hudson v. Palmer, supra.

Killborne, Fontenot or Turner had any knowledge whatever, prior to the alleged use of excessive force by defendant Stevens, that defendant Stevens intended to cause the plaintiff harm. All that the plaintiff alleges in this regard is that defendant Killborne was present when the alleged excessive force was applied, but the plaintiff acknowledges that defendant Killborne in fact looked surprised and shocked when the event occurred. Further, with regard to defendants Fontenot and Turner, all that the plaintiff alleges is that these defendants were present on the walkway immediately prior to the alleged use of force. The plaintiff alleges no facts from which an inference may be drawn that any of these defendants knew of or had any reason to suspect that defendant Stevens intended to cause the plaintiff harm. Nor does the plaintiff allege that there was any prior history between himself and defendant Stevens which might have placed the other defendants on notice of any potential danger. The alleged assault by defendant Stevens occurred suddenly and without warning and, according to the plaintiff, lasted a few seconds at most. Accordingly, in the absence of any suggestion that defendants Killborne, Fontenot or Turner had any advance knowledge or opportunity to prevent the harm before it occurred, there is no basis for the imposition of liability against these defendants. See, e.g., Brown v. Brooks, 2010 WL 2772659 (E.D. La., June 17, 2010) (summary judgment granted to defendant security officers where "[p]rison officials had no reason to suspect that [the offending defendant] posed any known or anticipated threat to plaintiff before the alleged assault").

The plaintiff next complains that, after the incident of alleged excessive force on October 19, 2009, defendant Stevens threatened the plaintiff and had the plaintiff placed in segregated confinement for a

period of seventeen (17) days without advising the plaintiff of the nature of any pending disciplinary charges. Thereafter, on November 4, 2009, the plaintiff was allegedly brought before a disciplinary court, chaired by defendants Brumfield and Thurman, and advised for the first time that he was being charged, by defendant Paul Payne, with two disciplinary violations, one for placing pieces of tape and wire insulation on or under doors adjacent to his workplace, and one for refusing to cooperate with an investigation by refusing to submit to a lie detector test. The plaintiff asserts that he was denied due process at this disciplinary board hearing because he was not given advance notice of the charges, was not allowed to call witnesses or produce evidence on his own behalf, was not provided with an impartial hearing officer, was not provided with a written statement of the reasons for the finding of guilt, and was found guilty where there was no evidence to support the former charge.

The plaintiff's allegations in this regard fail to state claims of constitutional dimension. First, the plaintiff's allegation that defendant Stevens subjected the plaintiff to threats and verbal abuse is not cognizable under § 1983. <u>McFadden v. Lucas</u>, <u>supra</u>; <u>Burnette v. Phelps</u>, <u>supra</u>. Further, although the plaintiff complains that he was charged with two false disciplinary reports, was held in segregated confinement for 16 days without notice of the charges levied against him, was thereafter found guilty and sentenced to segregated confinement without appropriate procedural due process protections, the law is clear that mere allegations that an inmate has been reported or punished for conduct of which he is innocent do not, without more, state a claim of denial of due process. <u>Collins v. King</u>, 743 F.2d 248 (5th Cir. 1984).

Specifically, the United States Supreme Court has made clear that such claims do not implicate the inmate's constitutional right to due process unless the resulting punishment subjects the inmate to an atypical and significant deprivation (evaluated in the context of prison life) in which the State might conceivably have created a liberty interest. Sandin v. Conner, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). In Sandin, the Supreme Court held that a disciplinary sentence of a transfer to segregated confinement failed to rise to the level of a constitutional violation. In the instant case, similarly, the Court concludes that the plaintiff's 17-day period in administrative segregation, followed by a disciplinary sentence of a transfer to maximum security segregated confinement, of a 12-month loss of incentive wages and of a 30-day period of cell confinement, did not result in an atypical and significant deprivation in the context of prison life. See Orellana v. Kyle, 65 F.3d 29 (5th Cir. 1995) ("After Sandin v. Conner, .... it is difficult to see that any ... deprivations in the prison context, short of those that clearly impinge on the duration of confinement, will henceforth qualify for constitutional 'liberty' status"). Moreover, the plaintiff had no constitutionally protected liberty or property interest in his classification or prison job assignment. Jackson v. Cain, 864 F.2d 1235 (5th Cir. 1989). See also Bulger v. United States Bureau of Prisons, 65 F.3d 48 (5th Cir. 1995) (federal prisoner). Thus, although the plaintiff was unhappy with the loss of his trustee status and job assignment, he had neither a protected liberty interest in that assignment nor a legitimate expectation that he would be maintained at that classification level. Accordingly, the plaintiff's claims in this regard fail to rise to the level of a constitutional violation and must

be dismissed.

The plaintiff also complains that there was insufficient evidence to support the finding of guilt relative to the referenced disciplinary charges. In this regard, although the plaintiff was not entitled to procedural due process protections in connection with his disciplinary proceedings, as discussed above, the courts have held that in order for a prison disciplinary sentence to pass constitutional muster, there must be "some evidence" reflecting that the inmate committed the offense in question. <u>Superintendent, Massachusetts Correctional Institution v. Hill</u>, 472 U.S. 445, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985). The "some evidence" standard is extremely deferential, <u>see</u> <u>Morgan v. Dretke</u>, 433 F.3d 455 (5th Cir. 2005), and thus, "[a]scertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses or weighing of the evidence." <u>Id.</u> Rather, the relevant question is "whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." <u>Id.</u> Indeed, even if the evidence is "meager", so long as there is "some evidence" to support the findings of the disciplinary board, the board's decision must be upheld. <u>Id.</u>

In the instant case, it appears that there was "some evidence" to support the plaintiff's finding of guilt. The plaintiff concedes in his Complaint that he worked in the room where the tape and wire insulation were allegedly found, and he acknowledges that the defendants concluded, based on this circumstantial evidence, that the plaintiff placed the tape and wire on or under the doors "to detect if anyone had opened the doors." Although the plaintiff contends that this conclusion "makes no sense", the Court finds that the proximity of the tape and wire insulation to his place of work amounted to "some evidence" sufficient

to support the finding of guilt.  And with regard to the referenced lie detector test, the plaintiff explicitly concedes that he refused to participate in the test because the defendants would not allow his attorney to be present.  Accordingly, this aspect of the plaintiff's claim must also fail.

Finally, the plaintiff complains that the defendants' actions, including transferring him to a different institution on November 16, 2009, were undertaken in retaliation (1) for his having engaged in legal research preparatory to filing a complaint or grievance against the defendants for their failure to compensate him for his portraits and (2) for his refusal to take a lie detector test when requested to do so.  In this regard, the law is clear that the taking of action against an inmate in retaliation for the inmate's exercise of his constitutional rights is a violation of the inmate's constitutional rights.  <u>Ruiz v. Estelle</u>, 679 F.2d 1115 (5th Cir.), <u>opinion amended in part and vacated in part</u>, 688 F.2d 266 (1982), <u>cert. denied</u>, 460 U.S. 1042, 103 S.Ct. 1438, 75 L.Ed.2d 795 (1983); <u>Gibbs v. King</u>, 779 F.2d 1040 (5th Cir.), <u>cert. denied</u>, 476 U.S. 1117, 106 S.Ct. 1975, 90 L.Ed.2d 659 (1986).  Specifically, prison officials are not allowed to retaliate against an inmate because of the inmate's exercise of his First Amendment right to seek redress of grievances by complaining to supervisory officials about the alleged wrongful conduct of prison employees.  <u>Id.</u>  Claims of retaliation are not favored, however, and the Courts must carefully scrutinize same with skepticism, lest federal courts embroil themselves in every disciplinary act that occurs in penal institutions.  <u>Woods v. Smith</u>, <u>supra</u>.  Further, an inmate's First Amendment right to complain is limited to the making of non-frivolous complaints involving the assertion of legitimate

constitutional rights, <u>Johnson v. Rodriguez</u>, 110 F.3d 299 (5th Cir. 1997),

<u>cert. denied</u>, 522 U.S. 995, 118 S.Ct. 559, 139 L.Ed.2d 400 (1997). <u>See</u>

<u>also</u> <u>Lewis v. Casey</u>, 518 U.S. 343, 116 S.Ct. 2174, 135 L.Ed.2d 606

(1996); <u>Tighe v. Wall</u>, 100 F.3d 41 (5th Cir. 1996); <u>Woods v. Smith</u>, 60

F.3d. 1161 at 1166 (5th Cir. 1995), <u>cert. denied</u>, 516 U.S. 1084, 116 S.Ct.

800, 133 L.Ed.2d 747 (1996). In other words, an inmate has no

constitutional right to pursue frivolous complaints regarding matters

that do not implicate his constitutional rights. <u>See</u> <u>Johnson v.</u>

<u>Rodriguez</u>, <u>supra</u>. It follows from this principle that a frivolous

grievance or complaint may not form the basis for a viable § 1983

retaliation claim. <u>Id.</u> <u>See also</u> <u>Brown v. Craven</u>, 106 Fed.Appx 257 (5th

Cir. 2004) ("We have held that 'neither any frivolous filings nor

secondary litigation activity ... may comprise the basis of a retaliation

claim.'"); <u>Shelton v. Lemons</u>, 2011 WL 3648121 (S.D. Tex., Aug. 17, 2011)

("an inmate does not have a right to file a frivolous grievance, and a

frivolous grievance cannot support a section 1983 retaliation claim");

<u>Mitchell v. Miller-Roach</u>, 2011 WL 2273509 (N.D. Tex., May 17, 2011), and

cases cited therein.

Applying this standard in the instant case, the Court concludes that

the plaintiff has failed to show that the defendants have retaliated

against him for pursuing one or more non-frivolous complaints involving

the assertion of legitimate constitutional rights. Specifically, the

plaintiff alleges that the defendants initially retaliated against him

because he was conducting research into the defendants' taking of his

property without just compensation. As previously noted above, however,

this claim is not one of constitutional dimension because an unauthorized

intentional taking of property by a state employee is not a cognizable

violation of the plaintiff's constitutional rights. Accordingly, the plaintiff's complaint regarding such conduct may not form the basis for a viable retaliation claim in this Court. Johnson v. Rodriquez, supra; Brown v. Craven, supra. Furthermore, there is no recognized right of an inmate to refuse to take a lie detector test when requested to do so by a correctional officer investigating a violation of prison rules. See United States v. Huntley, 2010 WL 4223741 (N.D. Ga., Aug. 27, 2010), and cases cited therein. Thus, even if the defendants took action against the plaintiff for the conduct alleged, the plaintiff has not established that this retaliation was in response to the plaintiff's exercise of identifiable constitutional rights. Accordingly, this claim is not cognizable under § 1983 and is subject to dismissal for this reason.

Based upon the foregoing, the defendants' Motion to Dismiss, rec.doc.no. 34, should be granted, dismissing the plaintiff's claims asserted against the moving defendants for failure to state a claim upon which relief may be granted (with the exception of the plaintiff's claim of excessive force asserted against defendant James Stevens, see note 2, supra). In addition, the plaintiff's claims asserted against defendant Curtis Thurman should also be dismissed, upon initial screening in accordance with 42 U.S.C. §§ 1983(e) and 1915A, see note 1, supra, also for failure to state a claim upon which relief may be granted.

Turning to the cross-motions for summary judgment of the plaintiff and the remaining defendant, James Stevens, rec.doc.nos. 33 and 35, the defendant moves for summary judgment, relying upon the pleadings, a Statement of Undisputed Facts, certified copies of excerpts from the plaintiff's medical records, and the affidavits of Dr. Anthony Tarver and defendants James Stevens, Tyrone Killborne and Keithe Turner. Although

the plaintiff has also filed a motion for summary judgment, he has provided no affidavits or documentary evidence to support the contentions he makes therein. Accordingly, the Court finds, as hereafter discussed, that the plaintiff's claim of excessive force is not supported by evidence in the record and that defendant Stevens is therefore entitled to summary judgment in his favor, dismissing the plaintiff's claim asserted against this defendant.

Summary judgment is appropriate where there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Rule 56, Federal Rules of Civil Procedure. <u>Celotex Corporation v. Catrett</u>, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If the moving party carries its burden of proof under Rule 56, the opposing party must direct the Court's attention to specific evidence in the record which demonstrates that the non-moving party can satisfy a reasonable jury that it is entitled to a verdict in its favor. <u>Anderson</u>, <u>supra</u>. This burden is not satisfied by some metaphysical doubt as to alleged material facts, by unsworn and unsubstantiated assertions, by conclusory allegations, or by a mere scintilla of evidence. <u>Little v. Liquid Air Corp.</u>, 37 F.3d 1069 (5th Cir. 1994). Rather, Rule 56 mandates that summary judgment be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. <u>Celotex</u>, <u>supra</u>. Summary judgment is appropriate in any case where the evidence is so weak or tenuous on essential facts that the evidence could not support a judgment in favor of the non-moving party. <u>Little</u>, <u>supra</u>, 37 F.3d at 1076. In resolving

a motion for summary judgment, the Court must review the facts and inferences in the light most favorable to the non-moving party, and the Court may not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes.  International Shortstop, Inc. v. Rally's, Inc., 939 F.2d 1257 (5th Cir. 1994), cert. denied, 502 U.S. 1059, 112 S.Ct. 936, 117 L.Ed.2d 107 (1992).

Force is excessive and violates the Eighth Amendment of the United States Constitution if it is applied maliciously and sadistically for the very purpose of causing harm rather than in a good faith effort to maintain or restore discipline.  Hudson v. McMillian, 503 U.S. 1, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992); Whitley v. Albers, 475 U.S. 312, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986).  Not every malevolent action by a prison guard, however, gives rise to a federal cause of action.  The Eighth Amendment's prohibition against cruel and unusual punishment necessarily excludes from constitutional recognition de minimis uses of physical force, provided that such force is not of a sort "repugnant to the conscience of mankind."  Hudson v. McMillian, supra.  While an inmate-plaintiff need not show a significant injury to prevail on a claim of excessive force, a necessary element of an excessive force claim is proof of some injury resulting from the use of such force.  Knight v. Caldwell, 970 F.2d 1430 (5th Cir. 1992), cert. denied, 507 U.S. 926, 113 S.Ct. 1298, 122 L.Ed.2d 688 (1993).  Factors to be considered in determining whether the use of force has been excessive include the extent of injury sustained, if any, the need for the application of force, the relationship between the need for force and the amount of force utilized, the threat reasonably perceived by prison officials, and any efforts made to temper the severity of a forceful response.  Hudson

v. McMillian, supra.

In support of his assertion that he is not liable for the use of excessive force against the plaintiff on October 19, 2009, defendant Stevens has provided three (3) affidavits attesting that no force whatever was utilized against the plaintiff on that date. In addition, the defendant has produced the affidavit of a physician employed at DCI who attests that the plaintiff appeared at the DCI infirmary on October 19, 2009, with only minimal objective injuries. Specifically, while there was a small 3-4 mm laceration to the plaintiff's head with a central 1 mm round hole, there was only superficial bleeding, no injury was observed to the plaintiff's tongue, and no blood was visible in the plaintiff's mouth. The small injury was cleaned with hydrogen peroxide; the plaintiff was provided with Ibuprofen and Keflex in order to prevent infection; and the plaintiff was referred to a dentist the next day for an evaluation of his report of a chipped tooth. It does not appear from the plaintiff's medical records that he sought any further treatment for the injuries received in the alleged altercation. Based upon this evidence, it does not appear that the plaintiff suffered anything more than a de minimis injury as a result of the defendant's alleged misconduct. See Siglar v. Hightower, 112 F.3d 191 (5th Cir. 1997) (holding that the plaintiff's injuries in that case, a twisted arm and a bruised ear causing pain of three days' duration, amounted to no more than a de minimis injury for which the plaintiff was not entitled to recover).

In contrast to the foregoing, the plaintiff's Complaint is unsworn, and he has provided neither his own affidavit nor any competent summary judgment in support of his assertions. In this regard, it is clear that

a party may not rest upon mere allegations or denials contained in his pleadings in opposing a motion for summary judgment. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); <u>Jacquez v. Procunier</u>, 801 F.2d 789 (5th Cir. 1986); <u>Fontenot v. Upjohn Company</u>, 780 F.2d 1190 (5th Cir. 1986); <u>John Hancock Mut. Life Ins. v. Johnson</u>, 736 F.2d 315 (5th Cir. 1984). In order to meet his burden, the party opposing a motion for summary judgment "may not sit on [his] hands, complacently relying" on the pleadings. <u>Weyant v. Acceptance Ins. Co.</u>, 917 F.2d 209 (5th Cir. 1990). The non-moving party must designate specific evidence in the record of sufficient caliber and quantity to create a genuine issue for trial such that a rational finder of fact could return a verdict in his favor. <u>Matsushita Electric Industrial Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 106 S.Ct. 2501, 91 L.Ed.2d 202 (1986); <u>Phillips Oil Company v. OKC Corporation</u>, 812 F.2d 265 (5th Cir. 1987). Upon the plaintiff's failure in this case to come forward with any affidavit or other evidentiary showing to refute the defendant's motion in this case, summary judgment should be granted in favor of defendant Stevens as a matter of law.

<u>RECOMMENDATION</u>

It is recommended that the defendants' Motion to Dismiss, rec.doc.no. 34, be granted, dismissing all of the plaintiff's claims asserted against the moving defendants (except the claim of excessive force asserted against defendant Stevens), with prejudice, for failure of the plaintiff to state a claim upon which relief may be granted. It is further recommended that the plaintiff's claims asserted against defendant Curtis Thurman be dismissed for the same reason pursuant to 42

U.S.C. §§ 1915(e) and 1915A.    It is further recommended that the plaintiff's Motion for Summary Judgment, rec.doc.no. 33, be denied, and that the Motion for Summary Judgment of defendant James Stevens, rec.doc.no. 35, be granted, dismissing the plaintiff's claim of excessive force asserted against this defendant, with prejudice, and that this action be dismissed.

Signed in chambers in Baton Rouge, Louisiana, December 9, 2011.

**MAGISTRATE JUDGE CHRISTINE NOLAND**